UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| RICHARD MICHAEL HEYL, and ) | Case No. 09-48593-705 |
| JENNIFER ANN HEYL, ) | Judge Kathy A. Surratt-States |
| ) | Chapter 7 |
| Debtors. ) | |
| ) | |
| STEVEN CONWAY, and ) | **Adversary No. 10-4384-659** |
| LORCON, LLC #1, ) | |
| ) | **PUBLISHED** |
| Plaintiffs, ) | |
| ) | |
| -v- ) | |
| ) | |
| RICHARD MICHAEL HEYL, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is Creditors Steve Conway and LorCon LLC #1's Complaint for Determination Excepting Debt from Dischargeability - Transaction Induced by Fraud [11 U.S.C.A. § 523(a)(2)(A); Fed. R. Bankr. P. 4007], Answer, Plaintiffs' Trial Brief, Debtor's Trial Brief and Joint Stipulation of Uncontested Facts. A trial was held on the matter on September 27, 2011 at which Plaintiff Steve Conway appeared in person and by counsel and Debtor Richard Heyl appeared in person and by counsel. The matter was taken under submission. Upon consideration of the record as a whole, the Court issues the following **FINDINGS OF FACT:**

Debtor Richard Michael Heyl (hereinafter "Debtor") and another individual named John J. Palczuk (hereinafter "Mr. Palczuk") formed a company called Johns Folly Ocean Villas, LLC (hereinafter "JFOV"). Debtor and Mr. Palczuk were the managing members of JFOV; they each had a 25% ownership interest. Jennifer A. Heyl held a 25% ownership interest and Karen E. Palczuk held a 25% ownership interest. JFOV was principally engaged in beach-front real estate development in St. John, U.S. Virgin Islands. Debtor was also involved in another company called

Heyl Partners Station Plaza (hereinafter "HPSP") which primarily sought to complete the development of ten condominiums in Kirkwood, Missouri and then sell the condominiums at a profit.

Plaintiff Steve Conway (hereinafter "Mr. Conway") is an investor and part-time farmer. Mr. Conway testified that he sought to diversify his investment portfolio and was therefore introduced to Debtor by a mutual associate. Mr. Conway and his company, LorCon LLC #1 (hereinafter "LorCon") acquired a 5% interest in HPSP in mid-2004 for an initial investment of $61,500.00. Debtor testified that he generally offers all of his investors the opportunity to be reimbursed their investment if the investor so chooses after one year. Debtor believes he offered Mr. Conway this opportunity regarding the HPSP investment.

Over dinner, Debtor informed Mr. Conway and his wife about JFOV and the opportunity to invest in JFOV. Mr. Conway went to St. John, U.S. Virgin Islands and inspected the JFOV property with Debtor. Mr. Conway thereafter decided to invest in JFOV on behalf of himself and LorCon. At that time, Debtor required a down payment by July 1, 2004 to become a charter member; charter membership included an annual one-week stay at the to-be-constructed villas free of charge and a guaranteed buy-back period as well. Mr. Conway made a down payment of $6,000.00 to secure the investment opportunity and charter membership.

Mr. Conway and LorCon ultimately acquired two points (2%) in JFOV at $30,000.00 per point. The points acquired by Mr. Conway and LorCon were assigned by Jennifer Heyl with the consent of both Debtor and Mr. Palczuk. These two points included a personal guarantee which indicated that "if a [chartered member] wishes to withdraw after January 1, 2008, the [managing members] will return the [chartered member]'s paid in capital to acquire their JFOV ownership share plus 15% *(fifteen percent)* of this amount and refund any cash call monies paid to JFOV. This one-time guaranteed refund is available from January 1, 2008 through May 31, 2008 and is not assignable." Pl. Ex. 18, ¶ 2.

HPSP began to encounter financial difficulties in part because the fire marshal stopped the

2

development of the condominiums.  Mr. Conway testified that Debtor approached Mr. Conway between February and April of 2007 about transferring Mr. Conway's investment in HPSP to another investment.  On or about May of 2007, Debtor offered Mr. Conway to transfer one point (1%) in JFOV to LorCon and agreed to accept on behalf of JFOV the $61,500.00 invested in HPSP as payment.  Debtor also offered Mr. Conway a guaranteed buyback, including all capital call investments, to be reimbursed between January 2010 to May 2010.  Mr. Conway further requested a 20% passive loss for the first six (6) months of 2007 in HPSP for both Mr. Conway and his wife, and Debtor agreed. See Pl. Ex. 58.  Mr. Conway also asked Debtor why he would not receive two additional points in JFOV for the $61,500.00 already invested in HPSP given Mr. Conway and LorCon's previous investment of $60,000.00 for two points (2%).  Debtor represented to Mr. Conway that an existing investor in JFOV, Mary Beth Kinsella (hereinafter "Ms. Kinsella"), had recently purchased an additional point for $60,000.00 and therefore Debtor could not give LorCon two points in JFOV for the $61,500.00 previously invested in HPSP.  Mr. Conway testified that Debtor made this representation in May 2007.  Mr. Conway also testified that Debtor purported to confirm Ms. Kinsella's investment in front of Mr. Conway while Mr. Conway was in Debtor's office when Debtor made a phone call to an unidentified person to confirm that Ms. Kinsella made an investment of $60,000.00 for one additional point.  Mr. Conway testified that based on the representation concerning Ms. Kinsella's recent purchase, the 20% passive loss of HPSP, the guaranteed buy-back and Debtor's offer to use the already invested $61,500.00, Mr. Conway accepted one point (1%) in JFOV on behalf of LorCon.  This agreement took place in May 2007 though execution of this agreement was back-dated to January 1, 2007 at the request of Debtor. Mr. Conway made an additional investment of $18,000.00 in capital calls; $8,000.00 in December of 2007 and $10,000.00 in the middle of 2008.

     Debtor and Mr. Conway both testified that Debtor also offered Mr. Conway an alternative investment wherein Debtor would grant Mr. Conway a five percent (5%) interest in another venture

3

called Madaford Gardens for which Debtor would also accept the funds previously invested in HPSP.  Debtor testified that the Madaford Gardens investment opportunity has some value today.

Ms. Kinsella is a customer service representative and former employee of Debtor.  Ms. Kinsella became an investor in JFOV on May 26, 2006 when she invested $68,000.00 for one point (1%).  Ms. Kinsella testified that she began discussions with Debtor about purchasing a second point in JFOV in September or October of 2007 and that at that same time, she was told that the second point would require an investment of $65,000.00.  Ms. Kinsella invested an additional $65,000.00 in JFOV on January 2, 2008 and acquired one point (1%). Pl. Ex. 74. Ms. Kinsella's 2007 Schedule K-1 indicates that she had a 1% ownership interest in JFOV throughout the entirety of 2007. Pl. Ex. 45.  Ms. Kinsella's Amended 2008 Schedule K-1 indicates that at the beginning of 2008 she had a 1% ownership but at the close of 2008, she had a 2% ownership interest in JFOV. Mr. Conway, LorCon and Ms. Kinsella are among over one dozen investors in JFOV, excluding Debtor and Mr. Palczuk.

JFOV and development of the St. John, US Virgin Islands property has failed.  On August 31, 2009, Debtor filed a petition under Chapter 7 of the Bankruptcy Code.  Mr. Conway now seeks a determination from this Court that Debtor owes Mr. Conway a nondischargeable debt for Mr. Conway's lost investment for the third point in JFOV and the related capital calls pursuant to Section 523(a)(2)(A).  Mr. Conway argues that this debt should be excepted from discharge because Mr. Conway reasonably relied on Debtor's representation that Debtor just sold a point to Ms. Kinsella for $60,000.00 prior to the date that Mr. Conway ultimately accepted additional ownership in JFOV, that Debtor would assign a 20% passive loss for HPSP which Debtor did not and that Mr. Conway's investment would be bought back by the managing members between January 1, 2010 and May 31, 2010.

Debtor argues first that the requirements of Section 523(a)(2)(A) cannot be met, particularly since the evidence shows that Ms. Kinsella did buy 2 points in JFOV for approximately $60,000.00

4

each. Second, Debtor argues that even if the requirements of section 523(a)(2)(A) can be met, Debtor gave Mr. Conway and LorCon the points in JFOV for no consideration and therefore Mr. Conway's damages are zero.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2010) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core and related proceeding under 28 U.S.C. § 157(b)(2)(I) (2010). Venue is proper in this District under 28 U.S.C. § 1409(a) (2010).

## CONCLUSIONS OF LAW

Under Section 523(a)(2)(A), a debtor cannot obtain a discharge from any debt "for money, property, services…to the extent obtained by – false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (2010). To establish fraud pursuant to Section 523(a)(2)(A), a creditor must prove the following elements by a preponderance of the evidence:

1. The debtor made a representation.
2. The debtor knew the representation was false at the time it was made.
3. The representation was deliberately made for the purpose of deceiving a creditor.
4. The creditor justifiably relied on the representation.
5. The creditor sustained the alleged loss as the proximate result of the representation having been made.

*In re Maurer*, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000)(citations omitted).

Mr. Conway contends that Debtor fraudulently induced him to acquire a third point in JFOV through Debtor's misrepresentation of the date Ms. Kinsella obtained her second point in JFOV, Debtor's promise to assign Mr. Conway and his wife a 20% passive loss for January through June of 2007 in HPSP and Debtor's promise of a guaranteed buyback of the third point in JFOV to be paid between January 1, 2010 and May 31, 2010. This Court concludes that Debtor made the

5

alleged representations. Mr. Conway however has only established that Debtor's representation concerning the amount and timing of Ms. Kinsella's second investment in JFOV to have been false at the time it was made. Mr. Conway has not proven that Debtor's representations concerning the 20% passive loss or the guaranteed buy-back were false at the time that they were made though today it is evident that Debtor has not fulfilled these promises.

      This Court further concludes that Debtor made the false representation concerning Ms. Kinsella for the deliberate purpose of deceiving Mr. Conway. Debtor sought to convince Mr. Conway that the going rate of a point in JFOV had doubled since Mr. Conway's first investment and therefore Debtor could not give Mr. Conway two points for the $61,500.00 initially invested in HPSP.

      This Court also concludes that Mr. Conway justifiably relied on the representation concerning Ms. Kinsella and thus accepted only one point (1%) for the $61,500.00 already invested in HPSP. Mr. Conway testified that Debtor confirmed Ms. Kinsella's purportedly recent purchase of a second point in May of 2007 in front of Mr. Conway by phone with an undisclosed person. Reliance on this representation was justifiable.

      The only remaining issue is whether Mr. Conway sustained the alleged loss as the proximate result of the representation having been made. Mr. Conway alleges $79,500.00 in damages for the $61,500.00 invested first with HPSP and then accepted by Debtor as an investment in JFOV, plus $18,000.00 in capital calls. Mr. Conway contends that had he not been told that Ms. Kinsella recently purchased a point for $60,000.00, that Mr. Conway and his wife would be given a 20% passive loss for HPSP and that there was a guaranteed buyback of the point to be paid between January 1, 2010 and May 31, 2010, he would not have invested his funds in JFOV and would have instead sought other opportunities. Mr. Conway further argues that the personal guarantee of the managing members to return Mr. Conway's investment in the initial two points invested had not yet run, and Mr. Conway could have withdrawn his initial investment as early as January 1, 2008. See Pl. Ex. 18, ¶ 2.

6

The record indicates that Mr. Conway's interest in whether Ms. Kinsella recently obtained a second point for $60,000.00 principally concerned whether one point rather than two points was adequate for the $61,500.00 already invested in HPSP since Mr. Conway and LorCon initially acquired two points for $60,000.00.  There is no indication that Mr. Conway's inquiry into Ms. Kinsella's investment timing would influence anything other than Mr. Conway's willingness to accept only one point in JFOV for the funds invested.  Moreover, Ms. Kinsella's first point was purchased after Mr. Conway's initial investment, and her first point was purchased in 2006 for $65,000.00. This tends to indicate that any investments after 2006 were likely more than $30,000.00 per point. Moreover, Ms. Kinsella did ultimately acquire a second point in January 2008 for $68,000.00.

Like the other investors in JFOV, both Mr. Conway, LorCon and Ms. Kinsella's investments are today worthless. And, while the culmination of the representations made to Mr. Conway influenced him to increase his stake in JFOV, this Court above concluded that Mr. Conway has only proven that the representation concerning Ms. Kinsella was false at the time it was made.  Mr. Conway has not met his burden of proof that Mr. Conway's investment in acquiring the third point in JFOV that is now worthless as a proximate result of Debtor's false representation concerning the timing and amount of Ms. Kinsella's second investment in JFOV.  Likewise, there is no basis to conclude that had Debtor not made the above representations, Mr. Conway and LorCon's investment in JFOV would today have value.

There is also no basis to conclude that the false representation concerning Ms. Kinsella's investment is the proximate cause of Mr. Conway's loss in making the capital calls.  Moreover, at the time of the capital calls, Mr. Conway had the opportunity to exercise his right to withdraw his investment in the initial two points at a 15% interest, yet Mr. Conway opted to instead increase his investment by making $18,000.00 in capital calls.  Further, at the time that Mr. Conway made the $18,000.00 in capital calls, Ms. Kinsella had already acquired her second point in JFOV.

7

This Court must consider all the arguments for damages presented. *See In re Gilmartin,* 459 B.R. 720, 724 (B.A.P. 8th Cir. 2011). An alternative argument for damages is that had Debtor not made the false representation concerning Ms. Kinsella, Mr. Conway would not have continued to invest with Debtor. Mr. Conway however has not presented this Court with any evidence which purports to show on what basis Mr. Conway could have recovered his initial investment in HPSP. To the contrary, the record indicates that Mr. Conway's initial investment in HPSP would have been lost in HPSP but for Debtor's suggestion to accept Mr. Conway's HPSP investment as consideration for an additional point in JFOV. Debtor testified that he generally gave his investors the opportunity to be reimbursed their investment after one year but there is no evidence that this opportunity was still available to Mr. Conway in May 2007. Further, there is no basis for this Court to conclude that had Debtor not made the false representation concerning Ms. Kinsella, Mr. Conway would have instead chosen the Madaford Gardens investment opportunity.

Mr. Conway sought an investment opportunity to diversify his portfolio. Debtor convinced Mr. Conway that investing in HPSP and JFOV were potentially lucrative opportunities and in so doing, Debtor made several representations. There is no dispute that Debtor's representation concerning the timing and amount of Ms. Kinsella's second investment was false at the time it was made, and that Debtor made this false representation, among other representations, to convince Debtor to increase his investment in JFOV. This false representation is insufficient to prove that Mr. Conway's loss is the proximate result of the false representation made by Debtor. So too, Mr. Conway has not met his burden of proof that but for this misrepresentation, he would not have

increased his investment in JFOV and instead would have recovered the funds used to acquire the third point. Therefore, by separate order, judgment will be entered in favor of Debtor.

*/s/ Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: February 13, 2012
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

Spencer P. Desai
Desai Eggmann Mason LLC
Pierre Laclede Center
7733 Forsyth Boulevard, Suite 2075
St. Louis, MO 63105

Richard Michael Heyl
1012 N. Taylor Avenue
Kirkwood, MO 63122

Thomas H. Riske
Desai Eggmann Mason LLC
7733 Forsyth Blvd., Suite 2075
Clayton, MO 63105

Richard J. Magee
Eckenrode-Maupin, Attorneys at Law
8000 Maryland Avenue, Suite 1300
St. Louis, MO 63105

9